

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-26-2004

# Windfelder v. May Dept Stores Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1879

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

### Recommended Citation

"Windfelder v. May Dept Stores Co" (2004). *2004 Decisions.* Paper 974.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/974

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1879

THOMAS B. WINDFELDER, an individual,

Appellant

v.

THE MAY DEPARTMENT STORES COMPANY,
d/b/a KAUFMANN'S DEPARTMENT STORE

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civil Action No. 01-cv-01494
(Honorable David S. Cercone)

Argued February 12, 2004

Before:  SCIRICA, *Chief Judge*, ROTH and McKEE, *Circuit Judges*

(Filed February 26, 2004)

STANLEY M. STEIN, ESQUIRE (ARGUED)
Feldstein, Grinberg, Stein & McKee
428 Boulevard of the Allies
Pittsburgh, Pennsylvania 15219

    Attorney for Appellant

SUZANNE WOODARD, ESQUIRE (ARGUED)
May Department Stores
Office of Legal Counsel
611 Olive Street, Suite 1750
St. Louis, Missouri 63101

PHILIP J. MURRAY, III, ESQUIRE
Thorp, Reed & Armstrong
One Oxford Centre, 14th Floor
301 Grant Street
Pittsburgh, Pennsylvania 15219

      Attorneys for Appellee

---

## OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

In this employment discrimination action, plaintiff Thomas B. Windfelder appeals a grant of summary judgment in favor of defendant Kaufmann's Department Store. We will affirm.

## I.

Kaufmann's is a department store division of The May Department Stores Company, operating approximately 50 stores in the Pennsylvania, Ohio, New York and West Virginia regions. Each year, store managers at Kaufmann's receive an overall performance rating on the following scale:

    1. "Outstanding" ("O") - clearly superior performance;
    2. "Very Good" ("V") - well above the expected performance;
    3. "Effective" ("E") - expected level of performance;
    4. "Marginal" ("M") - below expected level of performance; or

2

5. "Unacceptable" ("U") - well below expected results.

These performance appraisals are based on individual ratings in sales, customer service, shortage, profits, and "people development." Annual performance reviews also reflect specific accomplishments and missed opportunities.

Windfelder began working for Kaufmann's as an executive trainee in 1972. He worked as a store manager from 1980 to 1986 and as a Regional Vice President (RVP) from 1986 to 1993, when his position changed from RVP to store manager of the downtown Pittsburgh Kaufmann's store. As store manager from 1980 to 1986, Windfelder received three "V," two "E," and one "M" rating. While working as RVP from 1986 to 1993, he received one "V," five "E," and one "M" rating. He received two "V" and one "E" rating as the downtown Pittsburgh store manager from 1993 to 1995, and an "O" rating in 1996.

Windfelder claims Kaufmann's began to discriminate against him on the basis of his age in May 1997, after Rick Bennet became President of Kaufmann's. During an unannounced walk-through of the Pittsburgh store on May 23, 1997, Bennet remarked to Windfelder, "it's good to see someone around here with less hair than me." Bennet then saw a sock display that was in disarray, learned that Windfelder had 25 years of service, and allegedly remarked, "25 years and you let a table of socks look like that." RVP James McGowan conducted Windfelder's 1997 overall performance review and gave him

a "marginal" rating.[1]

In 1998, Kaufmann's rearranged its management structure so that Windfelder reported directly to McGowan. Windfelder claims his working relationship with McGowan began to deteriorate in Spring of 1998, when a May's official visited the downtown store and discovered some price signs on the displays that did not match the ticketed price on the merchandise. Upon hearing of this incident, McGowan allegedly became upset with Windfelder. In October 1998, McGowan performed a walk-through of the downtown store. As Windfelder accompanied him and limped due to a leg injury, McGowan allegedly said to him, "Hey, you're getting too old for this." Windfelder received "marginal" ratings in his mid-year 1998 and 1998 reviews. McGowan noted on the reviews that Windfelder's communication with his staff was ineffective, he lacked leadership skills, and he did not develop his staff. In addition, Windfelder's management team stated that they thought Windfelder lacked communication skills, leadership skills, and the ability to develop the team.

In January 1999, Kaufmann's demoted Windfelder to manager of the Southern Park retail branch in Youngstown, Ohio. He received a "marginal" mid-1999 review. Windfelder claims Kaufmann's set him up to fail, since he did not receive necessary

---

[1]This review was based on the following performance issues, many of which Windfelder does not dispute: sock and towel displays table not up to visual and presentation standards; failure to mark shoes down to sale prices in a timely manner; messy "wrap and pack" area near the crystal area; failure to hold his staff accountable for maintaining the store; Ruby Selling Star Board in disrepair; and lack of effective communication with employees.

assistance during busy shopping periods. Kaufmann's counters that Windfelder had difficulty keeping the store up to the required standards and that he failed to effectively lead his management team.

On March 2, 2000, Windfelder's supervisor, RVP Mike Hubbell, gave him a "90 Day Final Performance Warning" which listed areas necessary for improvement. Windfelder requested additional information on the warning, but Hubbell did not respond. On April 5, 2000, Windfelder sent Hubbell a letter expressing concern that, due to "events in the last several years . . . I wonder whether there may be some early exit strategy in the works for me, and I fear that my age may be a factor." Hubbell sent two final warnings dated April 12, 2000 and May 23, 2000, both detailing failings in Windfelder's performance. On June 14, 2000, Windfelder was terminated due to the recent "marginal" appraisals because his "leadership, communication, and [ability to] positively influenc[e] results" remained deficient. Windfelder was 53 years old when he was terminated. He was replaced by a younger female, Ella Scales.

On August 28, 2000, Windfelder filed a discrimination charge with the EEOC and on August 7, 2001 brought suit in federal court. In his suit, Windfelder contended that he was terminated by Kaufmann's in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.,* and the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951 *et seq.* Windfelder also brought an unlawful retaliation claim under the ADEA. The District Court granted summary judgment in favor of Kaufmann's, and Windfelder timely appealed.

5

## II.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary. *Simpson v. Kay Jewelers,* 142 F.3d 639, 643 (3d Cir. 1998).

## III.

## A.

The ADEA prohibits employers from discriminating against individuals in hiring, termination, compensation, or conditions of employment on the basis of their age. 29 U.S.C. § 623(a)(1). To survive a motion for summary judgment in an ADEA case, a plaintiff must first establish a *prima facie* case of age discrimination.[2] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801 (1973). Upon such a showing, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. *Id.* at 802; *Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 522 (3d Cir. 1992). The plaintiff then has the burden to provide sufficient evidence for a reasonable factfinder to (1) reject the employer's nondiscriminatory explanation for its decision, or (2) believe that an invidious discriminatory reason was more likely than not a motivating cause of the employee's discharge. *Reeves v. Sanderson Plumbing Prods.,*

---

[2]The elements of a *prima facie* case of age discrimination are:
    (1) The plaintiff is a member of the protected class, i.e., at least 40 years of age;
    (2) The plaintiff is qualified for the position;
    (3) The plaintiff suffered an adverse employment decision; and
    (4) Non-members of the protected class were treated more favorably.
*Sempier v. Johnson & Higgins,* 45 F.3d 724, 728 (3d Cir. 1995).

*Inc.,* 530 U.S. 133, 143 (2000); *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994).

Kaufmann's concedes for the purposes of this motion that Windfelder can show a *prima facie* case of age discrimination. But it claims Windfelder's poor job performance led to his termination. The record provides ample testimonial and documentary evidence of Windfelder's marginal or dissatisfactory job performance. Because Kaufmann's has carried its burden of providing evidence of a nondiscriminatory reason for Windfelder's discharge, Windfelder must submit evidence from which a factfinder could reasonably believe Kaufmann's reasons for termination are a pretext for age discrimination, or Kaufmann's was motivated by a discriminatory animus. *Fuentes,* 32 F.3d at 763.

Windfelder may show pretext by producing evidence of "inconsistencies and implausibilities in [Kaufmann's] proffered reasons." *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 638 (3d Cir. 1993). Kaufmann's reasons for Windfelder's demotion and termination were consistent, as it clearly documented and communicated to Windfelder the reasons for his "marginal" reviews. Several members of Windfelder's management team further corroborated the poor evaluations with testimony that Windfelder was a poor communicator and ineffective leader. We hesitate to second-guess the process by which an employer evaluates an employee's performance, even when the appraisal involves subjective elements. *Healy v. New York Life Ins. Co.,* 860 F.2d 1209, 1216 (3d Cir. 1988). Windfelder cannot establish pretext by a mere drop in his performance evaluations from 1996 to 1997-99. *Ezold,* 983 F.2d at 528. In summary, the evidence here does not support a finding of pretext.

7

Furthermore, Windfelder has not shown that discrimination was more likely than not a cause for his demotion and termination. The only evidence of possible discrimination was McGowan's September 1998 comment, "You're getting too old for this." This comment carries little weight, since McGowan made the remark two years before Windfelder's termination and was not involved in the decisions to demote or terminate Windfelder. *See Ezold,* 983 F.2d at 545 ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."); *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1112 (3d Cir. 1996) (comment by company president "you're too old for this job" did not prove by a preponderance of the evidence that age was a determinative factor in employee's termination). Windfelder's claim cannot survive summary judgment.

**B.**

The ADEA forbids employers from discriminating against their employees for having made a charge, testifying, assisting, or participating in an investigation, proceeding or litigation against the employer. 29 U.S.C. § 623(d). To establish a *prima facie* case of retaliation, a plaintiff must show: (1) he was engaged in protected conduct; (2) he was discharged subsequent to such activity; and (3) a causal link exists between the protected activity and the discharge. *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3d Cir. 1997).

Windfelder claims the District Court erred in finding the alleged retaliation by

8

Kaufmann's was not sufficient to survive summary judgment. Windfelder contends Kaufmann's terminated him in response to his April 5, 2000 letter to Hubbell, which stated, "I fear that my age may be a factor." The District Court found that Windfelder's letter was merely a "general complaint of unfair treatment" and was not protected conduct. *See Barber v. CSX Distribution Servs., Inc.,* 68 F.3d 694, 701-02 (3d Cir. 1995).

Even assuming Windfelder's letter was protected activity under the ADEA, he has failed to establish a causal link between the letter and the termination. Windfelder had already received negative performance reviews for several years, and Kaufmann's had placed Windfelder on a 90 Day Final Warning one month before he sent the letter. After receiving the letter, Kaufmann's continued with the termination process by holding 30 and 60 day "touch base" sessions in which they provided Windfelder interim performance benchmarks, with the clear understanding that he would be terminated if he did not satisfy those benchmarks. Kaufmann's fired him only after finding his job performance had not improved. There is no indication that the letter, as opposed to Windfelder's job performance, caused his termination two months later.

Employers are not obliged to suspend all previously planned or contemplated actions upon receiving a Title VII complaint or learning that a suit has been filed. *Clark County School Dist. v. Breeden,* 532 U.S. 268, 272 (2001). Kaufmann's had already begun termination proceedings against Windfelder, and without other evidence of retaliation, it need not halt those proceedings simply because Windfelder wrote a letter alleging retaliation. A contrary holding might impede employers from permissible

9

terminations and encourage employees aware of an impending termination to attempt to create their own "severance package."

Windfelder did not establish a *prima facie* case for retaliation, and the District Court properly granted Kaufmann's motion for summary judgment.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

10